## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DORO SILIMANKAN KOITA,** | : | **CIVIL ACTION** |
| *Petitioner,* | : | |
| | : | **NO. 26-4401** |
| **v.** | : | |
| | : | |
| **JL JAMISON,** *in his official capacity* | : | |
| *as warden of the Philadelphia Federal* | : | |
| *Detention Center, et al.,* | : | |
| *Respondents.* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                    JULY 28, 2026

## MEMORANDUM OPINION

**INTRODUCTION**

Before this Court is Petitioner Doro Silimankan Koita's, ("Petitioner"), *petition for a writ of habeas corpus* filed pursuant to 28 U.S.C. § 2241, (the "Petition"), (ECF 1), which challenges his detention by the Department of Homeland Security, ("DHS"), and seeks immediate release.[1] In the Petition, Petitioner, a native of Malia, contends that he is being illegally detained in violation of the Immigration and Nationality Act, ("INA"), its implementing regulations, the Administrative Procedure Act, ("APA"), and the Fifth Amendment of the United States Constitution.  In their response, Respondents,[2] (hereinafter, the "Government"), argue that the Petition should be dismissed on the merits as Petitioner is being lawfully detained pursuant to 8 U.S.C. § 1231 of the

---

[1]     By Temporary Restraining Order dated June 26, 2026, this Court granted Petitioner's motion for temporary restraining order and enjoined the Government from removing Petitioner from this District during the pendency of his Petition. (ECF 2).  The TRO was once extended on July 9, 2026, (ECF 8).  It has since expired.

[2]     Petitioner has named the following parties as Respondents, in their official capacities, *to wit*: JL Jamison, warden of the Philadelphia Federal Detention Center; Markwayne Mullin, Secretary of DHS; General Todd Blanche, Attorney General of the United States; David Venturella, Acting Director of Immigration and Customs Enforcement, (hereinafter, "ICE"); and Brian McShane, Acting Philadelphia Field Office Director for ICE's Enforcement and Removal Operations.

1

INA, ("Section 1231"), because his Order of Supervision, ("OSUP"), was properly revoked and his continued detention is constitutional as it serves important governmental interests and has not yet surpassed the presumptively reasonable length.  The issues presented have been fully briefed and are ripe for disposition.  For the reasons set forth herein, the Petition is denied.

**FACTUAL BACKGROUND**

To address the issues before this Court, a brief summary of facts, which have been gleaned from the documents submitted with the Petition and the Government's response, is helpful:

On September 13, 1996, Petitioner, a Malian citizen, entered the United States legally pursuant to an F-1 visa.  (ECF 1 at ¶¶ 7, 13).  According to the Government, the terms of the visa permitted Petitioner to remain in the United States for a temporary period, which he thereafter exceeded.  (ECF 7 at p. 4).

In 1998, Petitioner was arrested by the Philadelphia Police Department, ("PPD"), for Copying Recording Devices, convicted, and sentenced to two years' probation.  (ECF 7 at p. 4).  On October 17, 2000, DHS received an anonymous call reporting that Petitioner was allegedly beating his U.S. citizen wife since she would not file immigration paperwork for him.  (ECF 7-1 at p. 3).  He was sent several G-56 call-in letters but never appeared.  (*Id.* at p. 3).  On May 20, 2002, Petitioner's wife eventually submitted an I-130 petition and I-485 application on his behalf.  (ECF 7-2 at p. 4).

On March 14, 2003, Petitioner was again arrested by the PPD for Possessing an Instrument of Crime, Simple Assault, Aggravated Assault, Recklessly Endangering Another Person, Terroristic Threats, and Firearm Carried Without a License.  (ECF 7 at pp. 4-5).  On October 14, 2003, Petitioner's wife withdrew the I-130 petition.  (ECF 7-2 at p. 4).  Notably, the charges related to Petitioner's 2003 arrest were dismissed on May 15, 2003.  (ECF 7 at p. 5).  Petitioner's I-485 application was denied on December 18, 2008.  (ECF 7-2 at p. 4).

A new I-130 petition and I-485 application were filed on Petitioner's behalf on December 14, 2008.  (ECF 7-3 at p. 4).  Three days later, on December 17, 2008, Petitioner was arrested by the PPD for Receiving Stolen Property, Access Device Fraud, and Identify Theft.  (ECF 7-3 at p. 4).  ICE lodged a detainer based on this arrest on December 18, 2008.  (*Id.*).  On December 22, 2008, Petitioner's second I-130 petition and I-485 application were rejected.  (*Id.*).  On May 27, 2009, Petitioner's 2008 charges were dismissed, and on May 29, 2009, ICE first took custody of Petitioner and placed him into removal proceedings.  (*Id.*).

2

By issuance of a Notice to Appear of May 29, 2009, Petitioner was charged removable under 8 U.S.C. § 1227(a)(1)(B) as a nonimmigrant who allegedly violated the terms of his nonimmigrant visa. (ECF 7 at p. 5). On August 31, 2009, he was released from custody on a $3,500 bond. (*Id.*); (ECF 7-3 at p. 4). On November 16, 2009, a third I-130 petition was filed on Petitioner's behalf. (ECF 7-3 at p. 4).

On December 16, 2009, the PPD arrested Petitioner for Possession with Intent to Manufacture or Deliver a Controlled Substance, Criminal Conspiracy, and Use/Possession of Drug Paraphernalia. (ECF 7 at p. 5). Petitioner was convicted of all charges and imprisoned. (*Id.*).

ICE lodged a detainer and rearrested Petitioner on May 10, 2011, pending the completion of his removal proceedings. (*Id.*). ICE also lodged additional charges of removability against Petitioner under 8 U.S.C. § 1227(a)(2)(A)(iii) in light of his conviction for an aggravated felony. (*Id.*). On July 12, 2011, Petitioner was ordered removed, (*id.* at pp. 5-6), and he waived his right to appeal the decision with the Board of Immigration Appeals. (ECF 7-3 at p. 4). On December 19, 2011, he was released from custody under an OSUP, pending issuance of a travel document. (ECF 1 at ¶¶ 14-15); (ECF 7 at pp. 5-6).

Thereafter, for nearly 15 years, Petitioner avers that he has fully abided by the terms of his OSUP, including attending regular ICE check-ins. (ECF 1 at ¶¶ 3, 19). Moreover, on May 17, 2024, Petitioner became the beneficiary of an approved I-130 petition. (ECF 7-3 at p. 4). On June 27, 2025, Petitioner moved to reopen his immigration proceeding with the EOIR, which was denied. (*Id.* at p. 4). On June 22, 2026, when voluntarily reporting to a required ICE check-in, Petitioner's OSUP was revoked and he was again detained. (ECF 1 at ¶¶ 1, 4, 19, 22); (ECF 7 at p. 6).

Petitioner avers that he was detained without notice or opportunity to be heard. (ECF 1 at ¶¶ 1, 4, 22). Petitioner further avers, upon information and belief, that prior to his arrest, ICE had not secured travel documents necessary for removal. (*Id.* at ¶¶ 24, 41). However, according to the Government, ICE: served Petitioner with a Warrant of Removal, Form I-205 and a Notice of Revocation of his release; possessed Petitioner's Malian passport and birth certificate; and conducted, on June 29, 2026, an informal interview to afford Petitioner the opportunity to respond to the revocation, (*i.e.*, seven days after he was detained). (ECF 7 at p. 6); (ECF 7-3 at p. 3). Specifically, the Government enclosed with its response the Notice of Revocation signed by John E. Rife, Acting Field Office Director on the date of the check-in and detention. (*See* ECF 7-5). In its relevant section, the Notice of Revocation provides as follows:

> Your release has been revoked pursuant to 8 C.F.R. §
> 241.13(i), for the following reason(s):

3

> Circumstances have changed such that there is a significant likelihood of removal in the reasonably foreseeable future[, ("SLRRFF"); and]
>
> ICE is seeking a travel document to effect your expeditious removal to Mali.
>
> On 07/12/2011, you were ordered removed to Mali . . .
>
> * * *
>
> **Notice of Informal Interview**
>
> On 6/25/2026, you will be afforded an informal interview at which you will be given an opportunity to respond to the reasons for this revocation. You may submit any evidence or information you wish to be reviewed in support of your release.

Included with the Notice of Revocation is an "OSUP Revocation Worksheet," (*see* ECF 7-5 at pp. 4-7), with the recommendations of an ICE supervisory officer and an assistant field officer director, the decision of a deputy field officer director, and a memorandum detailing Petitioner's criminal and immigration history.  Specifically, the supervisory officer's recommendations described the following as OSUP violations and/or events that led to SLRRFF:

> The Government of Mali is cooperating with the issuance of travel documents to citizens of their country.  A copy of the subject's Malian Passport and Birth Certificate are located within his file.

(ECF 7-5 at p. 3).  The supervisory officer concurred with the decision to revoke the OSUP, noting that "[t]he subject is an aggravated felon with no appeals, applications, petitions or waivers pending.  A copy of the subject's Malian passport and birth certificate are located within the file. . ." (ECF 7-5 at pp. 4-5).  Likewise, both the assistant field office director and deputy field office director documented their concurrence, with the latter noting that "SLRRFF exists. Danger to community. Children with mother. Proceed with removal."  (*Id.* at p. 5).

The Government also offers to the Court the interview notes of the ICE officer who conducted Petitioner's informal interview on June 29, 2026 (*i.e.*, two days after initially scheduled).  (*See* ECF 10-1).  Therein, the officer proffers that he "conducted an initial informal interview of the detainee. . . in order to afford the [noncitizen] an opportunity to respond to the reasons for revocation of his . . . order

of supervision stated in the notification letter." (*Id.*). The notes also detail Petitioner's oral responses regarding the Government's reasons for revocation, which generally detailed his long-standing residency in the United States, family ties, the burden of his removal on his family, and his efforts to "stay out of trouble." (*Id.*). Also, Petitioner informed the officer of his lack of travel documents due to their destruction in an apartment fire.

Petitioner remains detained at the Federal Detention Center in Philadelphia, Pennsylvania. Prior to his detention, Petitioner avers that he was residing with his wife and their two children in Philadelphia, Pennsylvania 19151, and serving as his family's sole financial supporter. (ECF 1 at ¶¶ 2, 7, 16).

## LEGAL STANDARD

A federal district court is authorized to grant a writ of *habeas corpus* under 28 U.S.C. § 2241 when the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution and/or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). Further, the Fifth Amendment of the United States Constitution entitles noncitizens to due process of law in deportation proceedings. *See Serrano-Alberto v. AG United States*, 859 F.3d 208, 211 (3d Cir. 2017) ("The Fifth Amendment protects the liberty of all persons within our borders, including [noncitizens] in immigration proceedings who are entitled to due process of law.").

The burden is on the petitioner to show that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). "Federal habeas petitioners must satisfy a heightened pleading requirement by stating all grounds for relief available to them and setting out in summary fashion the facts underlying each claim for relief." *Simms v. Carroll*, 432 F. Supp. 2d 443, 444 (D. Del. 2006) (first citing *McFarland v. Scott*, 512 U.S. 849, 856 (1994); then citing Rule 2(c) of the Rules Governing Section 2254 Petitions, 28 U.S.C. foll. § 2254). "'[B]ald assertions and conclusory allegations do not provide a court with sufficient information to permit a proper assessment of *habeas* claims, and a *habeas* court cannot

speculate about claims." *Id.* (quoting *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987)) (alterations in original).

**DISCUSSION**

As noted, Petitioner seeks *habeas* relief in the form of immediate release from detention on the grounds that ICE's revocation of his OSUP and his subsequent detention violates the INA, its implementing regulations, the APA, as well as his substantive and procedural due process rights under the Fifth Amendment of the United States Constitution. In its response, the Government argues that Petitioner's OSUP was properly revoked, his detention is lawful pursuant to Section 1231, the United States Supreme Court's holding in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that his detention comports with constitutional due process.

Based on the factual history of this case, this Court finds that Petitioner's detention falls within the purview of Section 1231. Section 1231 provides that, subject to exceptions, "when a[] [noncitizen] is ordered removed, the Attorney General shall remove the [noncitizen] from the United States within a period of 90 days." 8 U.S.C. § 1231(a). The 90-day period is referred to as the "removal period." 8 U.S.C. § 1231(a). However, "[a]fter the removal period ends, 8 U.S.C. § 1231(a)(6) authorizes an additional period of detention in certain circumstances — that is, the 'post-removal-period.'" *Jorge A.C.P. v. Warden of the California City Det. Ctr.*, No. 1:26-CV-04706-MWJS, 2026 WL 1878886, at *1 (E.D. Cal. June 30, 2026) (citing *Zadvydas*, 533 U.S. at 701). One such circumstance is, as here, if the noncitizen is removable under 8 U.S.C. § 1227(a)(2). *Id.*

However, Section 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. The United States Supreme Court has held that substantive due process limits a noncitizen's Section 1231 detention "to a period reasonably necessary to bring about that [non-citizen's]

6

removal from the United States." *Id*. Moreover, "when a noncitizen ordered removed is released from detention, the release is subject to an OSUP 'under regulations prescribed by the Attorney General[,]' which are codified at 8 C.F.R. § 241.5(a)." *Dudamel v. Jamison*, No. CV 26-361, 2026 WL 498612, at \*4 (E.D. Pa. Feb. 23, 2026) (internal citation omitted). Procedural due process concerns are implicated where the Government fails to adhere to the requirements of its own regulations. *Id.* With these principles in mind, each party's contentions are considered in turn.

### I.    *Lawfulness of Petitioner's Detention Under the INA*

As noted, Section 1231(a) provides that noncitizens ordered removed shall be detained during the removal and post-removal period or, if their removal cannot be timely executed during that time, released subject to supervision. 8 U.S.C. §§ 1231(a)(2)-(3), (6). Release pursuant to an OSUP is governed by the INA's implementing regulations and the OSUP itself sets out the noncitizen's specific conditions of supervision, including, *inter alia*, reporting requirements, travel limitations, and compliance with efforts to obtain a travel document. 8 C.F.R. §§ 241.5(a)(1)-(5).

"The relevant regulations provide that an OSUP can be revoked under two circumstances: (1) if the [noncitizen] 'violates the conditions of release,' the [noncitizen] 'may be returned to custody; and (2) upon a determination by certain enumerated individuals within ICE, a [noncitizen's] release can be revoked." *Reyes v. Jamison*, No. CV 26-1324, 2026 WL 970231, at \*3 (E.D. Pa. Apr. 9, 2026) (quoting 8 C.F.R. §§ 241.4(l)(1)-(2)). "When ICE revokes a [noncitizen's] OSUP pursuant to 8 C.F.R. § 241.4(l)(1), '[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release or parole'" and "afforded an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* (quoting same). This Court, and others, have construed the procedural protections of 8 C.F.R. § 241.4(l)(1) as

applicable to a noncitizen whose OSUP is revoked pursuant to a discretionary determination by ICE pursuant to 8 C.F.R. § 241.4(l)(2). *See Dudamel*, 2026 WL 498612, at *4 n.6.

In this case, the Government appears to have complied with the procedural requirements of 8 C.F.R. § 241.4(l) by providing Petitioner with a Notice of Revocation of Release, (the "Notice"), the same day that he was arrested and re-detained by ICE, and an informal interview one week after the revocation occurred. The Notice set forth that Petitioner's OSUP was revoked because of a circumstantial change that made removal significantly likely in the near future and set the prompt informal interview. The circumstantial change appears to be the Government's procurement of Petitioner's travel documents and the removal country Mali's changed receptivity toward U.S. deportees.

Moreover, attached to the Notice was a review of the revocation with other supportive reasons provided by three additional ICE officials; reasons that include that Petitioner was an aggravated felon with no status impacting his ability to be removed, Petitioner was a danger to the community, and that ICE was in possession of his travel documents necessary for removal. Therefore, ICE's revocation of Petitioner's OSUP complied with the INA and its implementing regulations. *See Reyes*, 2026 WL 970231, at *3-6 (finding the Government "plainly followed the procedures set out in the relevant regulations . . . when revoking [a noncitizen's] OSUP" where the noncitizen was provided with a same-day of detention Notice informing him of the reasons for revocation and a meaningful opportunity to respond to the revocation via informal interview within one week of detention).

Petitioner's arguments contesting the Government's compliance with the INA and implementing regulations are unpersuasive. Nevertheless, his arguments are briefly addressed: Petitioner avers that he was detained without notice or opportunity to be heard but

provides no factual basis for this conclusion.  In light of the significant documentation offered by the Government to the contrary, Petitioner's conclusory averments do not sustain his burden of showing he is entitled to *habeas* relief on the grounds of an unlawful detention.  *See Simms*, 432 F. Supp. 2d at 444-45 (dismissing *habeas* petition where petitioner failed to "provide any facts to support or explain his vague and conclusory allegation[s]" foundational to his claims).  Further,  Petitioner also avers that the decision to revoke his OSUP was made by an individual without authority to do so.  He is mistaken.  The Government correctly argues that the acting field office director possessed the authority to revoke the OSUP pursuant to 8 C.F.R. §§ 241.4(c)(4), (l)(2), and a written delegation of authority by the Executive Associate Commissioner, ("EAC").  *See Reyes*, 2026 WL 970231, at *5 (concluding that ICE field office directors have discretionary authority to revoke supervision under the pertinent regulations).  Petitioner further avers that his OSUP was revoked without findings required by law.  Again, this argument is discredited by the record before this Court.  Under 8 C.F.R. § 241.4(l)(2), an authorized official may revoke a noncitizen's OSUP when, in the opinion of the revoking official, *inter alia*, "revocation is in the public interest. . ."  8 C.F.R. § 241.4(l)(2).  This Court finds that the reasons proffered by ICE officials in the Notice and OSUP Revocation Worksheet explaining that Petitioner is subject to a final order of removal, there is a significant likelihood of his removal in the near future, and that he is a danger to the community are sufficient to show the revoking official determined revocation of Petitioner's OSUP was within the public interest.

Under the circumstances addressed and the facts of this matter, the Court finds the Government's revocation of Petitioner's OSUP complied with the INA.  For this and the reasons set forth, the Court need not and will not consider Petitioner's argument that his rights

under the APA were violated. *See Reyes*, 2026 WL 970231, at \*6 (concluding that an APA claim necessarily fails where the Government is found to have complied with the procedural requirements established by the INA's implementing regulations).

## II.    *Constitutionality of Petitioner's Detention*

### a.   *Substantive Due Process*

"To show a violation of substantive due process, a plaintiff must demonstrate that his detention served no legitimate government purpose by demonstrating 'a misuse of governmental power that shocks the conscience.'" *Arias Gudino v. Lowe*, 785 F. Supp. 3d 27, 42 (E.D. Pa. 2025) (quoting *Desousa v. Garland*, No. CV 21-3961, 2022 WL 1773604, at \*3 (E.D. Pa. May 31, 2022)). "In the immigration context, 'the Court must determine whether Plaintiffs' detention is rationally connected to a legitimate government purpose and whether it is excessive in relation to that purpose.'" *Id.* (quoting *Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020)). Importantly, the Supreme Court instructs that, "read in light of the Constitution's demands, [Section 1231(a)(6)] limits a[] [noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689.

In *Zadvydas*, the Supreme Court established six months as a presumptively reasonable period of detention pursuant to Section 1231(a)(6). *Id.* at 701. However, the Supreme Court made clear that the presumption is rebuttable where "a set of particular circumstances amounts to a detention . . . beyond[ ] a period reasonably necessary to secure removal." *Id.* at 699. To a district court tasked with determining "whether the detention in question exceeds a period reasonably necessary to secure removal[,]" the Supreme Court provides the following guidance:

> [T]he *habeas* court . . . should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the [noncitizen's] presence at the moment

10

of removal.  Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.  In that case, of course, the [noncitizen's] release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.  And if removal is reasonably foreseeable, the *habeas* court should consider the risk of the [noncitizen's] committing further crimes as a factor potentially justifying confinement within that reasonable removal period.

*Zadvydas*, 533 U.S. at 699-700.

Here, Petitioner's 36 day-long detention has not yet come near to exceeding the presumptively reasonable six month period established by the Supreme Court.  Further, on the current record, it has not exceeded a period reasonably necessary to secure removal.  Removal in the near future is reasonably foreseeable given that the Government is in possession of Petitioner's travel documents and the Government represents improved relations with Petitioner's removal country.[3]  Also, based  on Petitioner's criminal history and the need to protect the community from Petitioner's criminal and violent behavior, these factors weigh in favor of his detention pending that removal given his history.  The only apparent reason that Petitioner has not yet been removed is this pending *habeas* case, filed four days after his detention.  Accordingly, Petitioner's detention satisfies substantive due process.  *See Quan v. Mullin*, 2026 WL 1597470, at * (E.D. Pa. June 3, 2026) (finding a noncitizen's due process challenge to OSUP revocation and detention failed when he was detained for just over two months, ICE was in possession of his travel documents, the removal country was apparently accepting U.S. deportations, and the regulatory process requirements were followed).

---

[3]    Confusingly, the Government argues in its brief that the fact that "ICE does not have a travel document in hand at the time of Petitioner's detention does not make that detention unlawful or his removal not reasonably foreseeable." (ECF 7 at p. 15).  This argument is contradictory to the record, wherein ICE officials repeatedly document that it is in possession of Petitioner's necessary travel documents.  Assuming in error, the Government's argument regarding a lack of travel documents is disregarded.

11

### b. *Procedural Due Process*

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (citation modified). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[The] Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

To determine whether Petitioner has been denied his due process, this Court applies the *Mathews* balancing test and weighs the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

The first *Mathews* factor, the impact of OSUP revocation and detention on Petitioner's private interest in liberty, is "more than minimal" where his detention has been determined lawful under the INA. *See Wilkinson v. Austin*, 545 U.S. 209, 225 (2005) ("Prisoners held in lawful confinement have their liberty curtailed by definition, so the procedural protections to which they are entitled are more limited than in cases where the right at stake is the right to be free from confinement at all."). The second factor, the risk of erroneous deprivation of such interest, weighs against Petitioner's argument because his detention has thus far complied with the applicable

procedural safeguards. The third factor, the Government's interest, weighs in favor of finding adequate process. The Government complied with its regulations in revoking Petitioner's OSUP and detaining him in order to effectuate his removal and revocation was determined within the public interest by an authorized official. On balance, the *Mathews* factors lead this Court to find that the Government's actions in this case complied with procedural due process. *Contra Dudamel*, 2026 WL 498612, at *4 (finding the Government violated a noncitizen's right to due process when his OSUP was revoked without process and without facts showing detention was necessary for removal because he was a law-abiding citizen who complied with ICE reporting requirements).

Under the circumstances described, this Court finds that Petitioner has failed to meet his burden to establish a violation of his constitutional rights under the Fifth Amendment.

**CONCLUSION**

For the reasons set forth, Petitioner's *petition for a writ of habeas corpus* is denied. An Order consistent with this Memorandum Opinion follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.

13